IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| ROBIN JACKSON,<br>    *Pro Se* Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 3:13cv535 (REP) |
| JOANNE NATTRASS, in her official<br>Capacity as Executive Director of the<br>Commonwealth Catholic Charities,<br>    Defendant. | ) ) ) ) ) ) | |

## REPORT & RECOMMENDATION

This matter now comes before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Defendant's Motion for Summary Judgment (ECF No. 22) in which Defendant moves for summary judgment on Plaintiff's retaliation claim brought under Title VII of the Civil Rights Act of 1964.

Robin Jackson ("Plaintiff") argues that Joanne Nattrass ("Defendant") terminated Plaintiff's employment in retaliation for complaints that Plaintiff allegedly made regarding allegedly unlawful employment practices. Defendant argues that Plaintiff's alleged complaints did not constitute protected activity under Title VII and that Defendant had no knowledge of the alleged complaints, precluding retaliatory animus. Having reviewed the pleadings filed by the parties, and concluding that oral argument on the motion would not materially aid in the decision-making process, the Court recommends that Defendant's Motion for Summary Judgment be GRANTED.

## I. BACKGROUND

Plaintiff alleges retaliation under Title VII, arguing that Defendant terminated Plaintiff's employment due to alleged complaints over alleged unlawful employment practices. When opposing a properly asserted motion for summary judgment, the non-moving party bears the burden of offering evidence to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In doing so, both the Federal Rules of Civil Procedure and this Court's Local Rules impose the added burden of identifying such evidence with particularity. Fed. R. Civ. P. 56(c)(1)(A); E.D. Va. Loc. R. 56(B); *Campbell v. Verizon Va., Inc.*, 812 F. Supp. 2d 748, 759 n.5 (E.D. Va. 2011) (interpreting 2011 amendments to Rule 56(c)). Defendants have complied with the mandates of Rule 56 by providing a list of undisputed facts. (Def.'s Br. in Supp. of Mot. for Summ. J. ("Def.'s Br.") (ECF No. 23) at 2-5.)

In opposing Defendant's motion, Plaintiff did not cite with particularity to those portions of the record that would support the existence of a genuine dispute of material fact.[1] Plaintiff has submitted some evidence with her responses to Defendant's motion; however, Plaintiff's responses largely contain argument and almost entirely rely upon the pleadings.[2] Nevertheless,

---

[1]    Proceeding *pro se*, Plaintiff has not strictly complied with the requirements of Local Rule 56(B); nonetheless, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (citation and internal quotation marks omitted). Further, "[p]leadings must be construed to do justice." Fed. R. Civ. P. 8(d). "Principles requiring generous construction of *pro se* complaints are not, however, without limits . . . . It does not require [district] courts to conjure up questions never squarely present to them. District judges are not mind readers." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

[2]    Eastern District of Virginia Local Rule 7(F)(1) does not permit an opposing party to file a sur-reply following a moving party's rebuttal brief without first obtaining leave of Court. E.D. Va. Loc. R. 7(F)(1). On June 23, 2014, however, Plaintiff filed a document titled "Statement in Response to Defendant's Rebuttal Brief in Support of a Motion for Summary Judgment." ("Statement in Response" (ECF No. 30).) The Statement in Response comes after Plaintiff made a timely reply to Defendant's Motion for Summary Judgment on May 14, 2014. (Pl.'s Br. in

2

the Court endeavors to construe those facts in the light most favorable to Plaintiff as the non-moving party, including consideration of those facts that she appears to dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Viewing the evidence through such a lens, the following constitutes the undisputed and material facts for purposes of resolving the Defendant's motion for summary judgment.

Commonwealth Catholic Charities ("CCC") employed Plaintiff from 2004 until November 2012.  (Def.'s Br., Ex. A ("Nattrass Aff.") ¶¶ 2, 11; Pl.'s Br. in Resp. to Def.'s Br. Requesting Mot. for Summ. J. ("Pl.'s Br.") (ECF No. 25), Ex. C ("Probation Letter") at 1-2.) Since July 2008, Plaintiff worked as Human Resources Coordinator.  (Nattrass Aff. ¶ 2.)  Lori Medford served as Human Resources Manager and Plaintiff's immediate supervisor in 2012. (Def.'s Br., Ex. B ("Medford Aff.") ¶¶ 1-2.)

On March 29, 2010, an individual was hired for the position of Controller.  (Nattrass Aff. ¶ 8.)  The job description for Controller states: "Bachelor's degree . . ., CPA, and five years related accounting experience; or equivalent combination of education and experience." (Medford Aff., Ex. 2.)  The position of Controller was grade EX 16 and had a salary range of $58,062 to $87,094.  (Medford Aff., Ex. 2.)  Vandra Harris ("Harris"), a black woman without a Bachelor's degree or CPA accreditation, did not apply for the position of Controller and was not hired for that position.  (Nattrass Aff. ¶ 8.)  Neither Defendant nor Medford, who was not working at CCC at the time, were involved with the hiring of the Controller.  (Nattrass Aff. ¶ 8;

---

Resp. to Def.'s Br. Requesting Mot. for Summ. J. (ECF No. 25).)  Plaintiff's Statement in Response constitutes both a sur-reply made without leave and a brief filed beyond the 21-day response period for *pro se* parties.  Noting Defendant's Objection (ECF No. 31) and taking into consideration Plaintiff's *pro se* status, the Court has nonetheless reviewed the Statement in Response and finds that it primarily constitutes a reiteration of Plaintiff's previous assertions and that the additional evidence does not affect Plaintiff's *prima facie* case for retaliation under Title VII, as discussed in this opinion.

Medford Aff. at ¶ 7.)  Plaintiff never complained to Medford about Harris not being chosen for the position of Controller.  (Medford Aff. ¶ 7.)

Defendant hired Graham Sellors ("Sellors"), a white male with a British education, as the Director of Marketing, because of his education and work experience.  (Nattrass Aff. ¶ 9; Medford Aff. ¶ 5.)  The job description for Director of Marketing states: "Bachelor's degree . . . required with a minimum five years related experience . . . .  A combination of education and experience will be considered.  Experience working in the non-profit sector and managing volunteers is preferred."  (Medford Aff., Ex. 1.)  The position of Director of Marketing was level "9 (EX 15)" and had a salary range of $50,489 to $75,733.  (Medford Aff., Ex. 1.)

Plaintiff never complained to Defendant or Medford regarding the selection of Sellors as the Director of Marketing.  (Nattrass Aff. ¶ 6; Medford Aff. ¶ 5.)  Plaintiff and Medford had a conversation regarding Sellors' educational background.  (Medford Aff. ¶ 5.)  Sellors was educated in England, and the degrees issued in England tend to be different from those issued in the United States.  (Medford Aff. ¶ 5.)  Plaintiff did not know whether Defendant knew of any alleged complaint that Plaintiff had made to Medford regarding Sellors and Harris.  (Def.'s Br., Ex. C ("Jackson Dep.") at 6-7.)[3]

On or about August 2, 2012, Medford made sexually explicit comments to Plaintiff and another individual.  (Jackson Dep. at 3.)  Plaintiff did not complain to Medford regarding these comments.  (Medford Aff. ¶ 3.)  Defendant did not know of any alleged complaint that Plaintiff made to Medford regarding these comments.  (Nattrass Aff. ¶ 4.)

On November 27, 2012, Defendant placed Plaintiff on a 45-day probationary period, because:  (1) Plaintiff placed Defendant's name, without approval, on letters sent to staff

---

[3]    When referencing the Jackson Deposition, this opinion utilizes the ECF pagination.

members that contained incorrect information, (2) Plaintiff responded unprofessionally in an e-mail to Medford, (3) Plaintiff's responsibilities included tracking staff birthdays, but she provided incorrect information regarding them to Nattrass, and (4) Plaintiff displayed a negative attitude and unprofessional conduct, including answering her cell phone, during open enrollment meetings. (Nattrass Aff. ¶ 10; Probation Letter at 1-2.)  Two days into Plaintiff's probationary period, Defendant terminated Plaintiff's employment. (Nattrass Aff. ¶ 11.)  Defendant made this decision based on additional information from other staff members detailing other occasions of Plaintiff's unprofessional behavior. (Nattrass Aff. ¶ 11.)  Defendant alone made the decision to terminate Plaintiff's employment. (Nattrass Aff. ¶ 12.)

Plaintiff alleges that Defendant terminated Plaintiff's employment in retaliation for Plaintiff's complaints to Medford about sexually explicit conversations and decisions related to the hiring of the Controller and Director of Marketing. (Pl.'s Br. at 5-6.)  Defendant moves for summary judgment on this claim, arguing that no questions of material fact exist as to Plaintiff's allegations and that Plaintiff failed to establish a claim for retaliation under Title VII.  (Def.'s Br. at 5-8.)

## II.  STANDARD OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255.

When considering a case for summary judgment, the Court cannot weigh the evidence to enter a judgment, but simply must determine if a genuine issue exists for trial. *Greater Balt. Ctr. for Pregnancy Concerns v. Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (quoting *Anderson*, 477 U.S. at 249). Once a motion for summary judgment is properly made and supported, the opposing party bears the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-48. Indeed, summary judgment must be granted if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

However, summary judgment should not usually be undertaken before discovery, because the non-moving party may, at that time, "lack[] material facts necessary to combat a summary judgment motion." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). The denial of summary judgment is especially appropriate "where the main issue is one of motive and where most of the key evidence lies in the control of the moving party." *Id.* at 484 (citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th. Cir. 2002)). In such a scenario, if a court is presented with a motion for summary judgment before the occurrence of meaningful discovery, the non-moving party may defeat summary judgment by "fil[ing] an affidavit or declaration . . . [or by] put[ting] the district court on notice as to which specific facts are yet to be discovered." *Id.* (citing *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008)) (discussing Rule 56(d) motions).

Nonetheless, to defeat an otherwise properly supported motion for summary judgment, the non-moving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact. *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). A "material fact" consists of one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 247-48; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact should be considered "material" must be determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the non-moving party, offers a sufficient basis for a reasonable jury to return a verdict in that party's favor. *Anderson*, 477 U.S. at 248.

### III. ANALYSIS

Defendant moves for summary judgment on the basis that Plaintiff failed to set forth evidence in support of elements of her Title VII retaliation claim, because Plaintiff failed to demonstrate that she engaged in protected activity or that Defendant had any knowledge of Plaintiff's protected activity. (Def.'s Br. at 6-8.) Plaintiff contends that disputed material facts exist. Specifically, Plaintiff argues that Defendant alone did not make the decision to terminate Plaintiff's employment and that her unprofessional and disrespectful behavior was not the basis for termination of Plaintiff's employment. (Pl.'s Br. at 5-6.) However, Plaintiff has failed to present evidence in support of these assertions.

As the non-movant, Plaintiff has a duty to offer evidence establishing a triable issue and to cite to "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); E.D. Va. Loc. R. 56(B); *see also Campbell*, 812 F. Supp. 2d at 759 n.5 ("The Court . . . place[s] a burden on the parties to establish whether a fact is genuinely in dispute by reasonably identifying in the record where such fact finds support."). While Plaintiff has submitted some evidence with her brief, Plaintiff has failed to meet her burden of demonstrating a genuine dispute as to material facts affecting her Title VII retaliation claim.[4] Therefore, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

A.  Plaintiff fails to set forth a retaliation claim under Title VII.

Title VII prohibits employers from "discriminat[ing] against any of [its] employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). A retaliation claim under Title VII requires that: (1) Plaintiff engaged in a protected activity, (2) Defendant took an adverse employment action against Plaintiff, and (3) a causal link between the protected activity and the employment action exists. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

If Plaintiff succeeds in demonstrating *prima facie* evidence of retaliation, the burden shifts to Defendant to articulate some legitimate, non-retaliatory reason for the employment action. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir.

---

[4]     The District Court set this matter for trial on June 2, 2014; therefore, discovery closed on April 18, 2014. (Scheduling Order (ECF No. 13), Pretrial Schedule A at 3; Pretrial Order (ECF No. 20).) This case, therefore, is distinguishable from *McCray* in that Plaintiff has had the opportunity to discover evidence needed to combat summary judgment. *See McCray*, 741 F.3d at 483-84.

1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Once Defendant offers

a non-retaliatory basis, Plaintiff "bears the ultimate burden of proving that she has been the

victim of retaliation." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-11 (1993)).

      Plaintiff alleges that Defendant terminated Plaintiff's employment in retaliation for

Plaintiff's complaints to Medford about sexually explicit conversations and decisions related to

the hiring of the Controller and Director of Marketing.  (Pl.'s Br. at 5-6.)  However, Defendant

maintains that the undisputed facts demonstrate that Plaintiff's alleged opposition to Medford's

sexual comments and CCC's hiring practices did not constitute protected activity and that no

causal link existed, because Defendant had no knowledge of the alleged protected activity.

(Def.'s Br. at 5-8.)

    1.  Protected Activity

      A Title VII retaliation claim first requires that Plaintiff engaged in a protected activity.

*Coleman*, 626 F.3d at 190.  Protected activity under § 2000e-3 may be in the form of

participation or opposition.  42 U.S.C. § 2000e-3(a).  Protected participation activity occurs

when a plaintiff "has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under [Title VII]." *Id.*; *Laughlin v. Metro. Wash. Airports

Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citation omitted).  However, protected "[o]pposition

activity encompasses utilizing informal grievance procedures as well as staging informal protests

and voicing one's opinions in order to bring attention to an employer's discriminatory activities."

*Laughlin*, 149 F.3d at 259.  While a plaintiff need not undertake opposition activity through a

formal process, to qualify as legitimate opposition activity a plaintiff must reasonably believe

that her employer was engaging in unlawful employment practices. *See id.* ("We 'balance the

purpose of the Act to protect persons engaging reasonably in activities opposing . . .

discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.'"). "The inquiry is therefore (1) whether [plaintiff] 'subjectively (that is, in good faith) believed' that the [defendant] had engaged in [an illegal practice], and (2) whether this belief 'was objectively reasonable in the light of the facts.'" *Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003) (citing *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002)).

In the instant case, Plaintiff has not engaged in participation activity. The evidence does not indicate that she participated in any investigation, proceeding or hearing under Title VII before the termination of her employment. Likewise, as discussed below, the evidence does not indicate that Plaintiff engaged in protected opposition activity.

a. Plaintiff's opposition to the sexually explicit conversation

Plaintiff has argued that retaliation was taken against her because of her alleged complaints over a sexually explicit conversation that Medford had in her presence. (Pl.'s Br. at 5.) These alleged complaints, however, do not constitute protected opposition activity under Title VII.

As an initial matter, the evidence does not establish that Plaintiff ever made an affirmative complaint to either Defendant or Medford regarding the sexual conversation. Plaintiff offered no evidence that she ever made such a complaint; instead, she relies on argument and allegations raised in her pleadings. (Pl.'s Br. at 5.) Rather, the evidence shows that Plaintiff never complained to Medford regarding the sexual conversation and that Defendant previously had no knowledge of Plaintiff's alleged complaint. (Nattrass Aff. ¶ 4; Medford Aff. ¶ 3.) Therefore, the undisputed facts demonstrate that Plaintiff did not engage in protected opposition activity regarding the sexually explicit conversation.

10

Even assuming that the complaint was made, it would not constitute protected opposition activity, because no evidence exists to demonstrate that Plaintiff had an objectively reasonable belief that the sexual conversation was unlawful.  Title VII violations occur when a workplace contains "discriminatory intimidation, ridicule, and insult" so severe that they "alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)).  For Plaintiff's belief to have been reasonable, the facts must demonstrate that a reasonable person could conclude that sexual comments were so pervasive and harassing that Plaintiff was working in a hostile environment. *See Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 341 (4th Cir. 2006) (applying the objectively reasonable standard for Title VII protected activity).  However, "'mere utterance of an . . . epithet which engenders offensive feelings in an employee,' . . . does not sufficiently affect the conditions of employment to implicate Title VII." *Harris,* 510 U.S. at 21 (quoting *Meritor,* 477 U.S. at 67).  "[A] single incident is insufficient to create 'an objectively reasonable belief' that a violation of Title VII was actually occurring." *Francisco v. Verizon South, Inc.*, 756 F. Supp. 2d 705, 727 (E.D. Va. 2010) (citing *Jordon*, 458 F.2d at 341).

The undisputed facts do not demonstrate such harassment.  Rather, they merely indicate that the explicit comments were made to Plaintiff and another individual in Medford's office. (Jackson Dep. at 3.)  No evidence indicates that the comments either constituted sexual harassment directed towards Plaintiff or created a hostile work environment.  Rather, the evidence demonstrates only a single incident involving a sexually explicit conversation.  That conversation did not constitute a violation of Title VII, and Plaintiff's apparent belief in its illegality did not satisfy the objectively reasonable prong of the opposition activity test.

Therefore, based on the foregoing analysis, Plaintiff has not made a *prima facie* showing as to the first element of her retaliation claim regarding her alleged opposition to the sexually explicit conversation.

    b.  Plaintiff's opposition to alleged racial discrimination

      Plaintiff also asserts that Defendant retaliated against Plaintiff, because of her alleged opposition to allegedly discriminatory hiring and promotion practices. (Pl.'s Br. at 5.) These complaints, however, do not constitute protected activity under Title VII.

      As with Plaintiff's allegation regarding the sexually explicit comments, Plaintiff failed to demonstrate that she actually engaged in opposition activity regarding the allegedly discriminatory hiring practices. The undisputed facts demonstrate that Plaintiff never complained to either Defendant or Medford about the hiring of Sellors for the Director of Marketing position. (Nattrass Aff. ¶¶ 5-6; Medford Aff. ¶ 5.) While the evidence establishes that Plaintiff and Medford had a conversation regarding Sellors' educational background, evidence does not show that she actually opposed his hiring or made a complaint. (Medford Aff. ¶ 5.) Further, Plaintiff never complained to Medford about Harris being denied a promotion to Controller. (Medford Aff. ¶ 7.) Indeed, Medford was not involved in the hiring of the Controller, and she did not work for CCC when the Controller was hired. (Medford Aff. ¶ 7.)

      Moreover, even assuming that Plaintiff had made the complaints, the evidence does not show that Plaintiff had an objectively reasonable belief that the alleged misconduct was an unlawful employment practice. "The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Plaintiff must provide evidence demonstrating the reasonableness of her belief that discrimination was occurring. *See Coleman v. Loudoun Cnty. School Bd.*, 294 F. App'x 778, 782 (4th Cir. 2008) (unpublished) (holding that a plaintiff's belief in discrimination was not objectively reasonable in the absence of factual evidence demonstrating discrimination).

Plaintiff argues that an unlawful practice occurred when Sellors, a white male, was hired as the Director of Marketing, although he lacked the allegedly required degree, while Harris, a black female, was denied a promotion for the position of Controller, because she lacked the allegedly required degree. (Pl.'s Br. at 5.) Plaintiff, however, admits that Harris and Sellors were not competing for the same position. (Jackson Dep. at 5.) Harris did not, in fact, apply for the position of Controller. (Nattrass Aff. ¶ 8.) Moreover, Sellors was hired at a later time for a different position, Director of Marketing. (Nattrass Aff. ¶ 9; Medford Aff. ¶ 5.) Given that Sellors and Harris were not in competition for the same position and that the evidence shows Harris never even applied for the Controller position, the evidence does not demonstrate that Plaintiff could have had an objectively reasonable belief that Defendant engaged in unlawful employment practices.

Plaintiff has not supplied evidence that reasonably demonstrates discriminatory hiring and promotion practices; instead, Plaintiff relies on opinion and argument contained in her pleadings. Indeed, the undisputed facts indicate that Sellors and Harris were never in competition for the same position, that Harris never applied for the position of Controller and that Sellors was selected as the Director of Marketing because of his experience and education. (Nattrass Aff. ¶¶ 8- 9; Medford Aff. ¶ 5; Jackson Dep. at 5.) The evidence does not support an objectively reasonable belief that the alleged misconduct was an unlawful employment practice.

13

Therefore, based on the foregoing analysis, Plaintiff has not made a *prima facie* showing as to the first element of her retaliation claim regarding her alleged opposition to the alleged racial discrimination.

Even assuming that Plaintiff engaged in legitimate opposition to unlawful employment practices, Defendant, the supervisor who made the decision to terminate Plaintiff's employment, had no knowledge of Plaintiff's alleged opposition. (Nattrass Aff. ¶¶ 4-7.) Plaintiff has offered no evidence that Defendant had knowledge of either of the alleged complaints; rather, Plaintiff relies on argument and allegations in her pleadings.

As discussed below, knowledge is essential to a Title VII retaliation claim. If Defendant, the supervisor in charge of Plaintiff's discharge, did not have knowledge of the protected activity, Plaintiff cannot prevail on her claim. Therefore, even assuming that the evidence does support Plaintiff's *prima facie* claim that she engaged in protected opposition activity, the retaliation claim must ultimately fail for lack of knowledge and a causal link.

2. Adverse employment action

A Title VII retaliation claim requires that Defendant took an adverse employment action against Plaintiff. *Coleman*, 626 F.3d at 190. The Fourth Circuit has recognized that discharge from employment constitutes an adverse employment action. *See, e.g., Dowe*, 145 F.3d at 656-57 (4th Cir. 1998) (finding that termination of the plaintiff's employment constituted adverse employment action). The record indicates that Defendant terminated Plaintiff's employment in late November 2012. (Nattrass Aff. ¶ 10-11; Probation Letter at 1-2.) Therefore, the record supports the second element for Plaintiff's Title VII retaliation claim. However, Plaintiff's retaliation claim still must fail for lack of a causal link.

3. Causal Connection

Finally, a Title VII retaliation claim requires a causal connection between Plaintiff's protected activity and the adverse employment action. *Coleman*, 626 F.3d at 190. The causal link requires that Plaintiff demonstrate that "retaliatory animus" motivated the contested action. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 290-91 (4th Cir. 2004). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2521 (2013). Furthermore, "[s]ince, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie* [retaliation] case." *Dowe,* 145 F.3d at 657 (citation omitted). Proximity of time can "satisf[y] the less onerous burden of making a prima facie case of causality." *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir. 1989). However, the decision-making supervisor's knowledge of the protected activity is still essential. *Dowe* 145 F.3d at 657; *see also Enoch v. Advanced Bioscience Laboratories, Inc.,* 2014 WL 109065, at *4 (D. Md. Jan. 10, 2014) (citing *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998)) (finding that although the proximity between adverse action and protected activity was within the *prima facie* range, the causal element still requires "showing that the employer *knew* of the protected activity").

In the instant case, while Plaintiff's discharge occurred in relative proximity to the alleged protected activity, the evidence shows that Defendant—the supervisor with final discharge authority—never knew of the alleged protected activity. (Nattrass Aff. ¶¶ 4-7, 11-12.) Because knowledge is "absolutely necessary," mere proximity in time cannot satisfy the evidentiary burden for the *prima facie* retaliatory claim. *Dowe,* 145 F.3d at 657; *Enoch* 2014

WL 109065, at *4. As the decision-maker who terminated Plaintiff's employment, Defendant must have had knowledge for the causal connection to exist. *See Dowe*, 145 F.3d at 657 (citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994) (retaliation claim dismissed where several supervisors participated in decision to terminate plaintiff's employment, but the supervisor with final authority who made the termination had no knowledge of the protected activity, because plaintiff had made no complaints of discrimination to that ultimate decision-maker)).

Plaintiff presented no evidence that Defendant, the supervisor with final decision-making authority, had knowledge of her alleged opposition activities for which she brings this retaliation claim. Indeed, at the time she terminated Plaintiff's employment, Defendant had no knowledge of Plaintiff's alleged opposition to either the sexual conversation or the hiring and promotion practices. (Nattrass Aff. ¶¶ 4-5.) Plaintiff never made complaints regarding the allegedly unlawful practices to Defendant. (Nattrass Aff. ¶ 6.) The evidence further shows that Defendant first learned of the alleged opposition activity when Defendant received Plaintiff's Charge of Discrimination filed with the Equal Employment Opportunity Commission after Plaintiff's discharge. (Nattrass Aff. ¶ 7.) Indeed, even Plaintiff admits that she cannot say that Defendant knew of either the alleged complaint regarding the sexual comments or the alleged complaints regarding Sellors and Harris. (Jackson Dep. at 3-4, 6-7.) Therefore, the undisputed facts demonstrate that no causal connection existed between the adverse employment activity and Plaintiff's allegedly protected activity.

As such, Plaintiff failed to provide evidence to support the first and third elements of her retaliation claim; therefore, Plaintiff failed to establish a *prima facie* case for retaliation under Title VII.

4. Non-retaliatory rationale for termination of Plaintiff's employment

Plaintiff argues that Defendant terminated her employment in retaliation for her alleged opposition to allegedly unlawful employment practices. (Pl.'s Br. at 6.) Defendant maintains that she terminated Plaintiff's employment "because of poor job performance and lack of respect." (Def.'s Br. at 7.) "First, [Plaintiff] must establish, by a preponderance of the evidence, a prima facie case of retaliation. Once established, the burden shifts to [Defendant] to rebut the presumption of retaliation by articulating non-retaliatory reasons for its actions." *Dowe*, 145 F.3d at 656 (citing *Burdine*, 450 U.S. at 254) (upholding the district court's action in granting summary judgment where Plaintiff failed to establish a *prima facie* case for retaliation). Here, because Plaintiff has failed to establish a *prima facie* case for retaliation under Title VII, it is unnecessary to evaluate the rationale behind the termination of Plaintiff's employment.

Therefore, because Plaintiff has failed to establish a *prima facie* case for retaliation under Title VII, the Court recommends that Defendant's Motion for Summary Judgment be GRANTED.

## IV. CONCLUSION

For the reasons set forth above, the Court recommends that Defendant's Motion for Summary Judgment (ECF No. 22) be GRANTED.

Let the Clerk file this Report and Recommendation electronically and forward a copy to the Honorable Robert E. Payne, to Plaintiff at her address of record and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of**

any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

_____ /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: June 25, 2014